TIMOTHY T. KIM (SBN 314365)
**TESLA, INC.**
31353 Huntwood Avenue
Hayward, California 94544
Telephone: 510 • 737 • 1281
timkim@tesla.com

*Attorney for Defendant*,
TESLA, INC.

DANIEL BROME (SBN 278915)
**HUNTER PYLE LAW, PC**
505 14th Street, Suite 600
Oakland, California 94612
Telephone: 510 • 444 • 4400
dbrome@hunterpylelaw.com

*Attorney for Plaintiff*,
SHERRELL TEAGUE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRELL TEAGUE,<br><br>         Plaintiff,<br><br>     v.<br><br>TESLA, INC., which does business in California as TESLA MOTORS, INC.; and DOES 1-20, inclusive,<br><br>         Defendants. | Case No. 3:25-CV-09868-LJC<br><br>*Assigned to the Hon. Lisa J. Cisneros; Courtroom G*<br><br>**AMENDED STIPULATION TO ARBITRATE AND STAY COURT PROCEEDING; [~~PROPOSED~~] ORDER AS MODIFIED**<br><br>Complaint Filed:  October 17, 2025<br>Removal Date:   November 17, 2025<br>Trial Date:     None Set |

**IT IS HEREBY STIPULATED** by and between Plaintiff SHERRELL TEAGUE ("Plaintiff") and Defendant TESLA, INC. ("Defendant") (collectively the "Parties"), that the entire above-captioned action, shall be submitted to binding arbitration pursuant to the arbitration agreement signed by Plaintiff in relation to her employment with Defendant. Attached hereto as Exhibit "A" is a true and correct copy of the pre-dispute Arbitration Agreement executed by Plaintiff, whereby Plaintiff agreed to arbitrate any and all claims arising out of Plaintiff's employment with Defendant.

**IT IS HEREBY STIPULATED AND AGREED**, by and between the parties hereto, through their counsel of record, as follows:

1. This stipulation is made with respect to an arbitration agreement that was drafted by Defendant and was entered into before this dispute arose;

2. Plaintiff's claims alleged in this action, and all issues arising in connection with the same, shall be resolved through binding arbitration pursuant to the terms of the arbitration agreement;

3. The Parties agree that California Code of Civil Procedure §§ 1281.97 and 1281.98 apply to this dispute. The Parties further agree that Defendant is the "Drafting Party," and the arbitration agreement here was a "pre-dispute arbitration provision in a contract with a consumer or employee," as defined by § 1280(e); and

4. Plaintiff's claims asserted in this action shall be stayed in their entirety pending the outcome of arbitration and all matters and deadlines currently scheduled in this action are taken off calendar.

DATED: March 30, 2026                    **HUNTER PYLE LAW, PC**


By:      */s/ Daniel Brome*
         Daniel Brome
         Attorney for Plaintiff
         SHERRELL TEAGUE

AMENDED STIPULATION TO ARBITRATE AND STAY COURT PROCEEDING;
[~~PROPOSED~~] ORDER

DATED: March 30, 2026                      **TESLA, INC.**


By:     */s/ Timothy T. Kim*
        Timothy T. Kim
        Attorney for Defendant
        TESLA, INC.


## ELECTRONIC SIGNATURE ATTESTATION

I, Timothy T. Kim, attest pursuant to Northern District Civil Local Rule 5-1(i)(3) that all signatories on this document agree to the filing's content and have authorized this filing. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


DATED: March 30, 2026        By:     */s/ Timothy T. Kim*
                                     Timothy T. Kim
                                     Attorney for Defendant
                                     TESLA, INC.

AMENDED STIPULATION TO ARBITRATE AND STAY COURT PROCEEDING;
[~~PROPOSED~~] ORDER

# [~~PROPOSED~~] ORDER AS MODIFIED

Pursuant to the Stipulation entered into by Plaintiff SHERRELL TEAGUE ("Plaintiff") and Defendant TESLA, INC. ("Defendant") (collectively the "Parties"), by and through the Parties' counsel of record, and good cause appearing, it is hereby ordered:

1. Plaintiff's claims asserted in this action, and all issues arising in connection with the same, are properly subject to binding arbitration based upon the arbitration agreement entered into by Plaintiff and Defendant at the time of Plaintiff's hire;

2. The Court ~~will~~ orders Plaintiff's claims asserted in this action to binding arbitration; and

3. The Court ~~will~~ stays this action and all matters and deadlines currently scheduled are taken off calendar pending the outcome of the arbitration.

4. The parties shall file a joint status report no later than November 20, 2026 or fourteen days after the conclusion of arbitration, whichever is sooner.

**IT IS SO ORDERED.**

DATED: <u>March 31, 2026</u>                     _____

HONORABLE LISA J. CISNEROS

4                    Case No. 3:25-CV-09868-LJC

AMENDED STIPULATION TO ARBITRATE AND STAY COURT PROCEEDING;
[~~PROPOSED~~] ORDER

# EXHIBIT A



07/ 14/ 2020

Sherrell Teague

██████████████

United States of America


Dear Sherrell:

Tesla, Inc. ("Tesla" or the "Company") is pleased to offer you the non-exempt, hourly position of Production Associate  on the terms set forth below.  As Production Associate, you will perform the duties customarily associated with this position. You will report to Afton Versteegh.  Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.

Your rate of pay will be US Dollar $19.00 per hour, subject to standard payroll deductions and withholdings, in accordance with the applicable pay schedule. As a non-exempt employee, you may be eligible to earn overtime and you will be entitled to meal and rest periods (per the laws of the state where you work).  You will be eligible for paid time off according to Tesla's standard policy.  Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire. Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla.  Of course, Tesla reserves the right to modify your compensation and benefits from time to time, without advance notice, as it deems necessary.

Tesla offers a competitive benefits package described below:

Equity Grant:  Should you decide to accept the position, we will recommend to Tesla's Board of Directors, or committee thereof, that the Company grant you an equity award with the value of $ 6,000.00 in the form of Restricted Stock Units ("RSUs"), which will vest as described below.  This value is determined based on our standard equity granting policies, as further described below.  This award shall be subject to the terms and conditions of Tesla's 2019 Equity Incentive Plan and your Award Agreement, including vesting requirements.

Specifically, the RSUs shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on the first anniversary of the vesting start date (the first March 5, June 5, September 5 or December 5, as the case may be, after the end of the month in which you were hired, such date to be indicated in your Award Agreement) and six and twenty-five hundredths percent (6.25%) shall vest each quarter thereafter for the following twelve quarters , in each case subject to your continuing eligibility through the applicable vesting dates and subject to the terms of your Award Agreement. No RSUs shall vest other than on the first anniversary and twelve subsequent quarterly vest dates, and no right to any vesting shall be earned or accrued prior to such date.

New Equity Awards will be visible in E*Trade approximately eight weeks from your hire date. Grants are generally scheduled for approval on the 19th day of the month following your hire date. On the grant approval date, the average monthly market value of Tesla's stock price during month of hire is used to determine the number of shares granted (equity award value / average price), for RSU grants.

Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future. Finally, the receipt of this award is subject to your signing the appropriate Award Agreement through the E*Trade portal.

401K Program: You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.

Paid Time Off ("PTO") Program: You earn 10 hours of PTO per month for a total of 120 hours per calendar year. You may maintain a PTO balance of up to 240 hours. When the amount of PTO you have earned but not taken reaches the maximum balance, you will not earn additional PTO until you take time off and your PTO balance goes below 240 hours.

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship.  Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment.  As a result, you are free to resign at any time, for any reason or for no reason, with or without notice.  Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed.  It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case.  We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer.  You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer).  You also warrant that you do not possess any property containing a third party's confidential and proprietary information.  Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and, as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla proprietary information or the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and private arbitration in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

a. Any claim, dispute, or cause of action between the partiesmust be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and
b. The Parties agree that each may file claims against the other only in their individual capacities, and may not file claims as a plaintiff and/or participate as a representative in any representative action against the other, except to the extent this provision is unenforceable under the applicable law; and
c. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and
d. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and
e. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and
f. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and
g. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration; thus, claims for temporary or emergency injunctive relief to preserve the status quo prior to and/or in aid of arbitration are permitted.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims. If one or more of the provisions in this arbitration agreement, or any portion thereof, are deemed invalid, unenforceable, or void under the Federal Arbitration Act or other applicable law, then the remaining provisions, or portions thereof, shall not thereby be affected and will continue in full force and effect, and shall be given full effect without regard to the invalid, unenforceable, or void provision, or portion thereof.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, processes, systems, or proprietary data belonging to the Company or relating to the Company's affairs, which derive value from its non-public status (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.

If you accept our offer, your first day of employment will be 07/ 20/ 2020.  This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the state in which you work.

As required by immigration law, this offer of employment is conditioned upon satisfactory proof of your right to work in the United States.

Employment at Tesla is conditioned upon, and thus subject to, pre-employment screenings for employment verification, background, and reference checks. Candidates for safety-sensitive positions and for work on certain projects, as well as employees working in those positions, are also subject to pre-employment drug and alcohol screening, and random and other (such as reasonable suspicion and/or post-accident) drug and alcohol screening during the course of employment at the Company. Certain positions may also require successful completion of a pre-employment physical examination, which is designed solely to determine your physical ability to safely perform the essential functions of the job with or without reasonable accommodation. The Company reserves the right to periodically conduct background checks throughout any employee's tenure in accordance with the Fair Credit Reporting Act and applicable federal, state and local laws, consistent

with business need. Your employment, therefore, is contingent upon a clearance of a background investigation, reference check, drug screen and/or physical examination, as applicable. In limited cases due to business necessity, the Company may permit a candidate to start work, contingent upon the successful completion or results of a background check and/or reference check (aka "contingent start"), in which case the individual's employment may be subject to termination if the Company receives negative information or results in connection with a background check or reference check, even where employment has conditionally begun pending the background or reference check results.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to 07/ 16/ 2020 after which date this offer will expire.

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,

Tesla, Inc.

Elon Musk

Accepted by:

Signature: _Sherrell Teague_
Sherrell Teague (Jul 15, 2020 18:17 PDT)

Name:  Sherrell Teague
Date:  Jul 15, 2020

Start Date:        07/ 20/ 2020